IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Ex rel.<br>MARSHA FARMER,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF HOUSTON and HOUSTON<br>AREA URBAN LEAGUE,<br><br>　　　　　　Defendants. | § § § § § § § § § § § § § | Civil Action No. H – 03 – 3713 |

**MEMORANDUM AND ORDER**

Pending before the Court are Defendant City of Houston's Motion to Dismiss (Doc. #22) and Defendant Houston Area Urban League's Motion to Dismiss (Doc. #27). For the following reasons, the two Motions are **GRANTED IN PART** and **DENIED IN PART**.

**I.    BACKGROUND**

Relator Marsha Farmer ("Relator") brings this action on behalf of the United States of America against Defendants City of Houston ("the City") and Houston Area Urban League ("HAUL") (collectively, "Defendants") for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.

Relator asserts that she applied for assistance under the City's Emergency Home Repair Program ("the Program") after her roof failed during Tropical Storm Allison. The Program is funded by the United States through the Department of Housing and Urban Development ("HUD") under a Grant Agreement between the City and the United States. Under the Grant

Agreement, the City authorized and approved a grant allocation for the Program, and selected HAUL, a non-profit corporation, to implement a portion of the Program.

Relator alleges that, after initially qualifying for the Program,[1] HAUL inspected her property and sent her a write-up outlining the repairs to be made and the quantity and type of materials to be used. Relator noticed several incorrect quantities on the write-up, most notably, that HAUL listed 4,000 square feet of roofing material, when Relator knew that only 2,000 square feet of roofing material was needed the last time she had the roof replaced.

Relator then utilized the Texas Public Information Act to investigate other repairs made by HAUL under the Program. She inspected the City's disbursements to HAUL under the Program from November 1999 through February 2003, and compared them with estimates of roof size, based on the square footage of the repaired houses, which she obtained from the Harris County Appraisal District. Relator determined that the Program was paying for excessive roofing materials that were never used. Relator utilized this method of comparison to determine that the Program was paying for excessive charges in other areas as well.

As a result of her investigation, Relator alleges that Defendants made false claims in Request for Payment forms ("RFPs"), which were based on excessive materials supposedly used for roofs, gutters, foundations, water lines, utility lines, windows, smoke detectors, base cabinets, and counter tops. She also alleges that federal funds were wrongfully used for down payments on two houses; for removal of a swimming pool; and to pay invoices that were in excess of supporting bids, unaccompanied by change orders. The specific allegations refer to seventy-two projects and disbursements, totalling in excess of $140,000.

---

[1] The City alleges that Relator did not ultimately qualify for the Program. No work was actually performed on Relator's house by HAUL.

Relator provided a statement of all material evidence and information related to her complaint to the Attorney General of the United States and to the United States Attorney for the Southern District of Texas. She then filed her complaint under seal on behalf of the United States, alleging that Defendants filed false claims; conspired to file false claims; and failed to comply generally with the Program requirements. Plaintiff also asserted a claim for money had and received. The Government elected not to intervene, and the complaint was unsealed. Defendants each filed a Motion to Dismiss. The Motions will be considered together because the arguments for dismissal overlap in large part.

Defendants collectively argue that Relator's claims should be dismissed because: (1) Relator has not met the specificity requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"); (2) jurisdiction is barred by 31 U.S.C. § 3730(e)(4); (3) she does not have standing to assert a claim for money had and received; and (4) she does not have standing to assert a claim for Defendants' failure to comply generally with program requirements. Relator concedes that she does not have standing to bring either a claim of money had and received, or a claim for Defendants' failure to comply generally with program requirements, therefore these claims are **DISMISSED**.

## II.   PLEADING FRAUD WITH PARTICULARITY

Claims brought under the FCA must comply with the particularity requirements of Rule 9(b). *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). A motion to dismiss for failure to plead fraud with particularity under Rule 9(b) is treated as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id*. at 901. A district court will dismiss a complaint under Rule 12(b)(6) only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."

3

*Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). In a complaint alleging violation of the FCA, pleading fraud with particularity requires a plaintiff to set forth the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003). Rule 9(b) is to be harmonized with the general principles of Rule 8, which requires only that a complaint give the defendant fair notice of what the claim is and the grounds upon which it rests. *See* Wright & Miller Federal Practice and Procedure: Civil 3d § 1298.

Having reviewed the Amended Complaint, the Court finds and holds that the allegations satisfy the requirements of Rule 9(b) and are sufficient to inform Defendants of Relator's claims of fraud. Relator alleges that HAUL submitted false claims for reimbursement to the City, which the City paid using federal funds. Relator provides numerous specific examples of overcharging, each of which includes the date, the project location, and the estimated amount of excessive charges made by HAUL. Relator also points to an RFP from HAUL to the City, that is dated and signed by representatives of HAUL and the City, which certifies that the money requested and received was used solely on projects under the Program. Relator asserts that this constitutes a false claim because the RFP is based on excessive charges.

Defendants argue that since an RFP is a claim submitted by HAUL to the City, and not a claim submitted by the City to the federal government, Relator has failed to demonstrate a false claim for payment to the federal government. The City additionally argues that because an RFP is made by HAUL, there is no evidence that the City made a false representation. These arguments fail.

In *United States ex rel. Riley v. St. Luke's Episcopal Hospital*, the Fifth Circuit held:

> The FCA applies to anyone who knowingly assists in causing the government to pay claims grounded in fraud, without regard to whether that person has direct contractual relations with the government. Thus, a person need not be the one who actually submitted the claim forms in order to be liable.

355 F.3d 370, 378 (5th Cir. 2004) (citations and quotations omitted). Even though an RFP is submitted by HAUL to the City, the City uses federal funds to pay an RFP, therefore a request under the Program to be paid by the City is a request to be paid by federal funds, and payment by the City is payment by the federal government. Moreover, an RFP demonstrates that the City paid HAUL's fraudulent claims. Relator alleges that the City paid the claims with federal funds, knowing the claims were false; therefore, she has properly alleged that Defendants made, and conspired to make, false claims in violation of the FCA.

### III.    PUBLIC DISCLOSURE BAR

Defendants argue that the Court lacks jurisdiction over Relator's claims because of the FCA's "public disclosure bar." *See* 31 U.S.C. § 3730(e)(4)(A). Though this argument is raised in Defendants' Motions to Dismiss, the Court properly treats this argument under a motion for summary judgment standard because a "challenge under the FCA jurisdictional bar is necessarily intertwined with the merits." *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004) (quotation omitted).

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (citations and quotations omitted). Evidence is construed in the light most favorable to the non-moving party. *Id*.

Defendants argue that Relator's claims are barred under the "public disclosure" provision, which states:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). This requires the Court to consider three questions: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is the 'original source' of the information." *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Serv. Co.*, 336 F.3d 346, 352 (5th Cir. 2003).

### B. "Based Upon" a Public Disclosure

Defendants argue that there has been a public disclosure because some of the information Relator used to discover the alleged fraud was obtained under the Texas Public Information Act ("TPIA"). The Fifth Circuit has held that a response to a Freedom of Information Act ("FOIA")

6

request "is an administrative report constituting a public disclosure under § 3730(e)(4)(A)." *Reagan*, 384 F.3d at 176. The TPIA is the state counterpart of the federal FOIA, therefore a response to the TPIA must also be regarded as a public disclosure under § 3730(e)(4)(A).[2]

The next question is whether this action is based upon the publicly disclosed allegations. "An FCA qui tam action even partly based upon public allegations or transactions is nonetheless 'based upon' such allegations or transactions." *Id*. (citation and quotation omitted). Plaintiff does not dispute that this action is based largely on the responses she received from her TPIA requests, which qualify as public disclosures.

C.  **Original Source Exception**

Because there has been a public disclosure and this case is based upon those disclosures, the Court does not have jurisdiction under § 3730(e)(4) unless Relator is the original source of the information. *Id*. An original source is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

To come under the original source exception, Relator must satisfy a two-part test: (1) she must demonstrate that she has direct and independent knowledge of the information on which the allegations are based, and (2) she must demonstrate that she has voluntarily provided the information to the Government before filing her qui tam action. *Reagan*, 384 F.3d at 177. Only

---

[2] Some circuits make a distinction between qui tam suits based on "publicly disclosed information" and those based on "publicly disclosed allegations or transactions;" allowing the former to proceed while barring the latter. *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 653 (D.C. Cir. 1994). If the Fifth Circuit made this distinction, Relator's argument would be much simpler, since the gist of her position is that she relied in large part on publicly disclosed information, not publicly disclosed allegations, to assert a claim of fraud against Defendants. The Fifth Circuit has not made this distinction, however, so the Court is bound by the Fifth Circuit's interpretation that FOIA requests are "public disclosures" for purposes of § 3730(e)(4)(A).

the first part of the test is at issue here because there is no question that Relator provided the information to the Government before filing this action.

The "direct and independent" standard does not require Relator to have direct and independent knowledge of each false claim alleged in her complaint. *Id*. Relator "is simply required to possess direct and independent knowledge of the 'information on which the publicly disclosed allegations are based.'" *Id*. (quoting *Laird*, 336 F.3d at 355). Relator's knowledge is direct if it was "gained by [her] own efforts rather than learned second-hand through the efforts of others." *Laird*, 336 F.3d at 355 (citation omitted). Relator's "knowledge is considered 'independent' if it is not derived from the public disclosure." *Reagan*, 384 F.3d at 177.

Defendants argue that Relator's knowledge is neither direct nor independent because it is based almost entirely on public information. Although heavily based on public information, Relator's knowledge that Defendant engaged in fraud is direct and independent because it was gathered through her own efforts. Relator investigated and compared the City's disbursements to HAUL under the Program, with her estimates of costs based on records of the square footage of the houses that were repaired. Through these efforts, Relator determined that Defendants were inflating the quantity of materials needed to repair the houses and receiving payments for these excessive materials. Relator's own investigation demonstrated a new and undisclosed relationship between disclosed facts and put HUD "on the trail" of fraud. *See id*. at 179 ("[T]he investigation or experience of the relator either must translate into some additional compelling fact, or must demonstrate a new and undisclosed relationship between disclosed facts, that puts a government agency 'on the trail' of fraud, where that fraud might otherwise go unnoticed.").

Aside from the fact that Relator uncovered something new from the public information, her entire investigation began as a result of her independent knowledge that HAUL

overestimated materials to repair her roof. Even if Relator did not ultimately qualify for the Program, HAUL was sent to Relator's house to estimate the cost of repairing her roof under the Program. Because she had her roof repaired in the past, Relator knew how much material was necessary to repair her roof and recognized that HAUL's assessment of her house grossly exceeded the amount of materials needed. Relator's subsequent request for public records and investigation of other claims submitted by HAUL would never have begun if she had not first discovered that HAUL claimed excessive materials to repair her own roof.

Relator's investigation unearthed important information about fraudulent claims. Although the Program has been audited in the past, prior to Relator's efforts, there has never been an examination of HAUL's alleged overcharging practice, which is now under scrutiny. Because this review resulted from Relator's efforts, she is the original source of the information underlying her claims. The Court therefore has jurisdiction over the claims under 31 U.S.C. § 3730(e)(4).

## IV. CONCLUSION

Defendants' Motions to Dismiss (Doc. #22 and Doc. #27) are **GRANTED IN PART** and **DENIED IN PART**. Relator lacks standing to bring a claim of money had and received, and a claim for Defendants' failure to comply generally with program requirements, therefore these claims are **DISMISSED**. However, Relator has adequately alleged that Defendants made, and conspired to make, false claims in violation of the FCA, and is the original source of the information underlying her claims. Defendants' arguments to dismiss under Rule 9(b) and 31 U.S.C. § 3730(e) therefore fail.

IT IS SO ORDERED.

SIGNED this 5th day of May, 2005.

                                      KEITH P. ELLISON
                                      UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**