UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al*,   § | |
| § | |
| Plaintiffs,   § | |
| v.   § | **CIVIL ACTION NO. H-03-03713** |
| § | |
| **CITY OF HOUSTON,** *et al*,   § | |
| § | |
| Defendants.   § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant City of Houston's Motion for Summary Judgment (Doc. # 93), Defendant Houston Area Urban League's Motion for Summary Judgment (Doc. # 94), and Defendant City of Houston's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 92). For the reasons set forth below, the motions for summary judgment are **GRANTED**, and the motion to dismiss is **DENIED AS MOOT**.

## I. BACKGROUND

Relator Marsha Farmer ("Relator") brings this action on behalf of the United States of America against Defendants City of Houston ("the City") and Houston Area Urban League ("HAUL") (collectively, "Defendants") for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. Relator's allegations pertain to the City's Emergency Home Repair Program ("EHRP"), which is funded by the United States Department of Housing and Urban Development ("HUD"). Under a grant agreement with HUD, the City authorized and approved a grant allocation for the EHRP and selected HAUL, a non-profit corporation, to implement a portion of the program. The City administered and maintained the EHRP, using HUD grant funds from a line of credit that HUD had previously established for that purpose. The City's expenditures on the EHRP were subject to later audit by HUD.

Relator asserts that she applied for assistance under the EHRP after her roof failed during Tropical Storm Allison. She alleges that, after she initially qualified for the program,[1] HAUL inspected her property and sent her a write-up outlining the repairs to be made and the quantity and type of materials to be used. Relator states that she noticed several incorrect quantities on the write-up, most notably, that HAUL listed 4,000 square feet of roofing material, when Relator knew that only 2,000 square feet of roofing material was needed the last time she had the roof replaced. Relator then utilized the Texas Public Information Act to investigate other repairs made by HAUL under the EHRP. She inspected the City's disbursements to HAUL under the program from November 1999 through February 2003, and compared them with estimates of roof size, based on the square footage of the repaired houses, which she obtained from the Harris County Appraisal District. Relator determined that the EHRP was paying for excessive roofing materials that were never used. Relator utilized this method of comparison to determine that the program was paying for excessive charges in other areas as well, including gutters, foundations, water lines, utility lines, windows, smoke detectors, base cabinets, and counter tops.

As a result of her investigation, Relator alleges that Defendants made false claims in request for payment forms and other supporting documents, which were submitted by HAUL to the City, and subsequently approved and paid by the City, using HUD grant funds. Relator's specific allegations refer to seventy-two projects and disbursements under the EHRP. On September 12, 2003, after providing notice to the Attorney General of the United States and to the United States Attorney for the Southern District of Texas, Relator filed her complaint under seal on behalf of the United States, alleging that Defendants filed false claims, conspired to file false claims, and failed to comply generally with the EHRP requirements. Relator also asserted a claim for money had and received. After the United States Government ("Government") elected

---

[1] Relator did not ultimately qualify for the EHRP, and no work was actually performed on her house by HAUL.

2

not to intervene, Relator filed an amended complaint on August 18, 2004, and Defendants each filed a motion to dismiss. The Court granted these motions in part, dismissing Relator's claims against Defendants for money had and received and for their alleged failure to comply with program requirements.

Defendants have now moved for summary judgment on Relator's claims, and the City has moved to dismiss the claims for lack of subject matter jurisdiction. In response to Defendants' motions for summary judgment Relator has clarified that she is pursuing claims under 31 U.S.C. § 3729(a)(2) and (a)(3) only. Accordingly, Defendants' motions for summary judgment as to potential causes of action under any other sections of the False Claims Act, including 31 U.S.C. § 3729(a)(1), (a)(4), (a)(5), (a)(6), and (a)(7) are **GRANTED**.

With respect to Relator's claim under 31 U.S.C. § 3729(a)(2), Defendants urge that summary judgment is appropriate because Relator cannot show that either the City or HAUL presented a claim for payment or approval to the Government. Defendants contend further that summary judgment on Relator's 31 U.S.C. § 3729(a)(3) claim is warranted, because she has not presented any evidence that Defendants knowingly agreed to defraud the Government, as required to demonstrate a conspiracy. Relator argues, on the contrary, that presentment of a claim to the Government is not a necessary element of a claim under 31 U.S.C. § 3729(a)(2), and that Defendants' filings under the EHRP were subject to Government approval by virtue of HUD's auditing power. Relator argues that a conspiracy under 31 U.S.C. § 3729(a)(3) is evidenced by the signatures of City personnel on reimbursement forms submitted by HAUL to the City. The Court held a hearing on Defendants' motions on July 27, 2006. Having considered the parties' briefs and oral arguments, the Court finds that summary judgment for Defendants is appropriate. Because the Court **GRANTS** Defendants' motions for summary judgment, the motion to dismiss is **DENIED AS MOOT**.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material facts exists if a reasonable jury could enter a verdict for the nonmoving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Id.*

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party shows that there is a lack of evidence to support the nonmoving party's claims, the nonmoving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (quotation omitted). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

### B. Claim Under 31 U.S.C. § 3729(a)(2)

#### *1. Requirement of Presentment to the Government*

31 U.S.C. § 3729(a)(2) creates liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or

4

approved by the Government." 31 U.S.C. § 3729(a)(2); *see also United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Defendants assert that, in order for liability to arise under section 3729(a)(2), a claim must actually be presented to the Government for payment or approval. To put it another way, Defendants assert that the mere payment of a claim by a recipient of federal funding will not give rise to section 3729(a)(2) liability, absent evidence that the claim has been presented to the Government. As authority for this argument, Defendants cite the D.C. Circuit's opinion in *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004). In *Totten*, the court affirmed the dismissal of a relator's claim under 31 U.S.C. § 3729(a)(1) because no claim had been presented to an officer or employee of the Government. *Id.* at 490. The court went on to find that the requirement that a claim must be presented to the Government applies with equal force to section 3729(a)(2). *Id.* at 498.

First, the court recognized that section 3729(c) defines a "claim" to include requests made to grantees and other recipients "if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse [the recipient] for any portion of the money or property." *Id.* (citing 31 U.S.C. § 3729(c)). In light of this broad definition of a "claim," the court found that reading section 3729(a)(2) to *not* require the presentment of a claim to the Government would render the words "by the Government" in (a)(2) meaningless. *Id.* at 498-99. If Congress intended for liability to attach under section 3729(a)(2) simply by making or using a false record to get a claim paid by a recipient of federal funding, then the reference to false records or statements made "to get a false or fraudulent claim paid or approved" would have been sufficient without the additional requirement that the claim be paid or approved "by the Government." *Id.* The court thus concluded that, when Congress simultaneously added the words "by the Government" to section 3729(a)(2) and created section

5

3729(c), in a 1986 amendment to the False Claims Act, the intended effect was "fairly obvious: Congress was referring back to the presentment requirement of Section 3729(a)(1)." *Id.* at 499.

The court then turned to the parallel structure of sections 3729(a)(1) and (a)(2), noting that, prior to an amendment in 1982, the liability provisions of the False Claims Act were combined into one sentence.[2] *Id.* at 499-500. In revising the False Claims Act, Congress made clear that it intended no substantive change in the law, but rather, to remedy awkwardness and obsolete terms. *Id.* at 500. The court found that, "[t]he present Section 3729(a)(2), therefore, is the direct descendant of a clause that could only be read in conjunction with what is now Section 3729(a)(1): the reference to 'such claim' [in the pre-1982 version] was a shorthand reference to the claim already identified in the current subsection (a)(1) – that is, a claim that would be presented or caused to be presented to the United States." *Id.* at 500. Reading section 3729(a)(2) in concert with section 3729(a)(1), then, the claim to be paid or approved by the Government under (a)(2) would necessarily be a claim presented to the Government, as set forth in (a)(1).

Finally, the court in *Totten* determined that reading section 3729(a)(2) without the requirement of presentment would allow (a)(2) to render section 3729(a)(1) and its presentment requirement virtually meaningless. *Id.* at 501. In most cases in which False Claims Act liability might attach, false records or statements are made or used to get false claims paid or approved. *Id.* Rather than having ever to prove presentment under section 3729(a)(1), then, relators would simply allege violations of section 3729(a)(2). *See id.* To omit the presentment requirement

---

[2] Prior to its 1982 revision, the False Claims Act's liability provision read as follows:
> Any person . . . who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States . . . knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of *such claim*, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry . . .

*Totten*, 380 F.3d at 500 (quoting 31 U.S.C. § 231 (1976) (emphasis added)).

6

from section 3729(a)(2) would also lead to anomalous results: "a defendant who makes a false record to help someone else get a false claim paid or approved by a grantee [of federal funding] would be covered by the Act, but a defendant who actually presents a false claim to the grantee for payment or approval would not be," as there would be no presentment of the claim to the Government, such as to give rise to liability under section 3729 (a)(1). *Id.* at 501-02.

In addition to the D.C. Circuit's comprehensive analysis of the purpose and legislative history of section 3729(a)(2) in *Totten*, the district court for the Southern District of Ohio has surveyed the various holdings of the Federal Courts of Appeals on the question of whether liability under section 3729(a)(2) requires proof that a false or fraudulent claim has been submitted to the government. *United States ex rel. Sanders v. Allison Engine Co.*, 2005 WL 713569 at *2-4 (S.D. Ohio 2005). The court found that, in at least nine Circuits, a relator is required to show that a false or fraudulent claim was submitted to the Government, in order to state a claim based upon sections 3729(a)(1) and (a)(2). *Id.* at *2. Further, the court found that "no caselaw has been identified nor has any been found that would support the proposition that a violation of subsection (a)(2) of the FCA does not require evidence of the submission of a false or fraudulent claim to the Government." *Id.* Based upon these holdings, in addition to its review of the D.C. Circuit's opinion in *Totten*, the court concluded that liability under section 3729(a)(2) requires a showing that a false or fraudulent claim has been submitted to an officer or employee of the United States Government. *Id.* at *10. The district court for the Eastern District of Louisiana recently reached the same result, dismissing a relator's claim under sections 3729(a)(1) and (a)(2) because the claims at issue had been presented to a grantee of federal funds, rather than to the Government itself. *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 2006 WL 980676 at *2-3 (E.D. La. 2006).

While the Fifth Circuit does not appear to have addressed this particular issue, a finding that a claim must be presented to the Government in order to give rise to liability under section 3729(a)(2) is consistent with the court's treatment of the False Claims Act. In *United States v. Southland Management Corp.*, for example, the court noted that "[a]lthough § 3729(a)(2) prohibits the submission of a false record or statement, it does so only when the submission of the record or statement was done in an attempt to get a false claim paid. There is no liability under this Act for a false statement unless it is used to get [a] false claim paid." 326 F.3d 669, 675 (5th Cir. 2003). Because the defendants in *Southland* had made requests to the Government only for housing assistance payments to which they were already entitled under a funding agreement, the Court found that they had not made false claims. *Id.* at 676-77.

Further, as this Court recognized in its May 5, 2005 Order on Defendants' Motions to Dismiss, the Fifth Circuit has found that a person need not personally submit a claim to the Government in order to be liable under the False Claims Act.[3] *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004). In *Riley*, however, a claim was submitted to the Government, albeit not by the defendants seeking dismissal. *Id.* Thus, *Riley* does not stand for the proposition that it is unnecessary for a claim to be submitted to the Government for liability to attach under section 3729(a)(2); but rather, that a defendant may be liable under sections 3729(a)(1) and (a)(2) even if a different person or entity submits the claim at issue to the Government. *See also Rafizadeh*, 2006 WL 980676 at *2 (noting that *Riley* "still requires that the allegedly fraudulent claim itself be presented to the federal government for payment"). For liability to attach under section 3729(a)(2), therefore, a claim must be presented to the Government for payment or approval.

---

[3] To the extent that the May 5, 2005 Order might be read to suggest that payment of a claim with Government funds by a recipient of federal funding is enough to give rise to liability under section 3729(a)(2), it is superseded by this Memorandum and Order.

Relator cites a case from the District Court of the Virgin Islands as being analogous to the one at bar. *United States ex rel. Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 299 F. Supp. 2d 483 (D. V.I. 2004). In *Virgin Islands*, the court found that the defendant, the president of a construction company that had performed work on housing projects for the Virgin Islands Housing Authority ("VIHA"), was liable for providing false documents to VIHA under both sections 3729(a)(1) and (a)(2). *Id.* at 485-88. VIHA's budget was almost entirely funded by HUD, though it is unclear whether VIHA submitted any claim with respect to the housing projects to HUD or to any other component of the Government. *See id.* at 485 n.1. Without addressing the issue of whether or not a claim had been presented to the Government, the court held that the defendant's criminal conviction for fraudulent statements established that he had knowingly presented false records to the Government for the purpose of obtaining, or aiding in obtaining, payment or approval. *Id.* at 488.

To the extent that *Virgin Islands* challenges the presentment requirement outlined in *Totten* and other cases discussed above, the Court finds it unpersuasive. Although it appears that *Virgin Islands* may have involved a claim that was paid by a recipient of federal funding, rather than a claim that was presented to the Government for payment or approval, the court never specifically addressed or ruled upon the requirement of presentment of a claim to the Government. Rather, the court's ruling was based, in large part, upon the collateral effect of the defendant's criminal conviction.[4] Any suggestion that *Virgin Islands* eliminates the presentment

---

[4] The court found that the defendant's criminal conviction collaterally estopped him from denying that he:
> [K]nowingly and willfully made and caused to be made false, fictitious and fraudulent statements or representations concerning material facts within the jurisdiction of a department of the United States, namely, the Department of Housing and Urban Development, by claiming with supporting documents various costs that were not, in fact, direct costs of the Donoe project, each count in the criminal conviction constituting a separate fraudulent act.

*Virgin Islands*, 299 F. Supp. 2d at 486.

requirement is also outweighed by the thorough analyses of the presentment requirement undertaken in the cases set forth above.

Relator also attacks the *Totten* opinion, arguing that the Court should adopt the conclusions of the dissent. *See Totten*, 380 F.3d at 502 (Garland, J., dissenting). Relator offers no justification for this contention, however, and the Court is persuaded by the well-reasoned analysis and holding of the *Totten* majority, as well as by the subsequent cases adopting it. Relator also tries to distinguish *Totten* from the case at bar, noting that, in *Totten*, the allegedly false claims were presented to Amtrak, which is not a department, agency, or instrumentality of the Government. *Totten*, 380 F.3d at 491-92. Relator then states that, in the case at bar, "the fraudulent requests for payment were prepared in order to get the disbursement by the City of federal funds approved by the Department of Housing and Urban Development, and the Department of Housing and Urban Development is the Government!" Supp. Rejoinder to Defs.' Mots. for Summ. J. and Mot. to Dismiss at 2 (emphasis omitted). This argument misses the mark. Like Amtrak, the City is not a department, agency, or instrumentality of the Government, and Relator has failed to produce any evidence that the City, HAUL, or anyone else presented a claim to any entity that *is* a department, agency, or instrumentality of the Government with respect to the City's EHRP. The City's use of previously approved and allocated HUD funds does not constitute the presentment of a claim to the Government for purposes of the False Claims Act, as discussed below.

The Court finds, for the reasons set forth in *Totten* and subsequent cases, that liability arises under 31 U.S.C. § 3729(a)(2) only when a claim is presented to the United States Government for payment or approval.

*2. Evidence of Presentment of a Claim to the Government*

In supplemental briefing, Defendants argue that Relator has admitted that there is no evidence of "presentment" of a claim to the Government in relation to the City's EHRP. However, it appears from Relator's filings that she believes that the City's withdrawal of federal funds from the line of credit established by HUD constitutes the presentment of a claim to the Government. Relator also appears to view the presentment requirement as being met by the audit authority that HUD maintained over the City's EHRP. Neither of these arguments is meritorious.

Relator asserts that "the use of a letter of credit does not exculpate [D]efendants from liability under the False Claims Act." Resp. to the City's Mot. for Summ. J. at 7. According to Relator, "HUD retains its oversight authority when letters of credit are utilized – it [sic] authority to approve or disapprove what was done." Rejoinder to Defs.' Mots. to Dismiss and for Summ. J. at 8. Relator thus focuses on liability under section 3729(a)(2) for using false statements to get a false claim paid *or approved* by the Government. Her argument appears to be that, because HUD retained the ability to audit the EHRP, the request for payment forms and other documents created by HAUL and approved by the City were used to get false claims approved by HUD. *See* Resp. to the City's Mot. for Summ. J. at 7 ("Although [the City] drew federal funds using a letter of credit and later disbursed funds to the subrecipients, all expenditures were subject to later audit – i.e., approval or disapproval – by HUD.") (emphasis omitted).

While Relator's claims are factually correct, in that the City withdrew HUD grant funds from a line of credit, and that HUD retained audit power over the EHRP, this does not constitute presentment of a claim to the government. Although the City withdrew the funds from a line of credit, HUD had already approved the grant of the federal funds to the City and, accordingly, had previously established the line of credit for the particular amount of funds granted. The False

Claims Act does not reach such claims, where the federal funds at issue have already been provided by the Government. *Totten*, 380 F.3d at 493. Relying upon the present tense of the term "provides" in section 3729(c), the court found in *Totten* that:

> False Claims Act liability will attach if the Government *provides* the funds to the grantee *upon presentment of a claim* to the Government. Liability will also attach if, after the grantee presents the claim, the Government *provides* the funds directly to the claimant: the first "if" clause of subsection (c) – unlike the second – does not circumscribe the set of possible recipients of the federal funds. And under the second "if" clause, liability will attach if the Government – again, upon presentment of the claim – reimburses the grantee for funds that the grantee has already disbursed to the claimant.

*Id.* Thus, for liability to arise under the False Claims Act, the Government must provide federal funds concurrently with a claim being presented to it. *See also United States v. McNinch*, 356 U.S. 595, 599 (1958) (characterizing a claim under the False Claims Act as a "demand for money or for some transfer of public property," which causes the Government to disburse funds or "otherwise suffer immediate financial detriment"); *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968) (finding that a statement "made with the purpose and effect of inducing the Government immediately to part with money" was a claim under the False Claims Act).

Here, as Relator admits, HUD allocated funds and provided the line of credit to the City for purposes of its EHRP long before the City withdrew the funds or any HUD audit took place. Katie Worsham, the Director of HUD's Forth Worth Regional Office, explained that "[t]he City tells [HUD] what they plan to do with the money and HUD then gives the City its entitlement funds based on that plan of action;" and that "[t]he City draws down money based upon the activities that it plans to carry out when it's ready to expend those funds." Worsham Dep. 7:8-10, 22-24, June 6, 2006. Worsham further testified that, once HUD had approved the City's funding and provided the line of credit, the City was able to withdraw and use the money as it saw fit. Worsham Dep. 62:11-16. Because HUD provided the funds to the City well before the

City withdrew from the line of credit, and before HUD conducted any audit, neither of these events can constitute presentment of a claim to the Government. Likewise, because HUD provided the funds to the City before any allegedly false documents were made or used by Defendants, the submission of these documents to HUD during the later audit process cannot constitute presentment of a claim to the Government under the False Claims Act.

Moreover, the documents that Relator alleges were false – the request for payment forms and supporting documents – were not submitted to HUD at the time of, or in conjunction with, the City's withdrawal or use of the federal funds. Worsham Dep. 38: 1-2. Although HUD reviewed these documents in its later audit of the EHRP, the City made the documents available to HUD only after it had withdrawn and used the funds, and HUD's subsequent review cannot be construed as a request or demand by Defendants for payment or approval of the funds already granted and used. *See* 31 U.S.C. § 3729(c) (defining a "claim" to include "any request or demand . . . for money or property"). Similarly, the allegedly false documents were not prepared for the purpose of securing HUD approval of the EHRP during the audit process, but rather, were prepared by HAUL or HAUL's subcontractors in order to obtain reimbursement by the City. There is no evidence that Defendants made or used any of these documents for the purpose of obtaining HUD's payment or approval of a claim, as HUD had approved and provided the federal funds prior to the documents' creation. Although HUD's audit may be construed as a type of "approval" process for the City's EHRP, the relevant point of Government "payment or approval" for purposes of the False Claims Act occurred when HUD approved the City's plan for using the federal funds and established the line of credit from which the City could withdraw the funds at its own discretion.

As Relator herself acknowledges, the evidence presented demonstrates the existence of "false claims approved and paid with federal funds *by the City of Houston* to its four

13

subrecipients, [including] Houston Area Urban League . . . ." Resp. to City's Mot. for Summ. J. at 2. The Court cannot conclude that the City then presented a claim to HUD for payment or approval simply because the City withdrew funds from a pre-established line of credit or because HUD audited some of the expenditures made by the City with funds previously provided to it. Because Relator has failed to present any evidence demonstrating that claims were ever presented to the Government for payment or approval, Defendants are entitled to summary judgment on Relator's 31 U.S.C. § 3729(a)(2) claim.

**C. Claim Under 31 U.S.C. § 3729(a)(3)**

In addition to her section 3729(a)(2) claim, Relator alleges that Defendants violated section 3729(a)(3) of the False Claims Act, which provides liability for a person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). In order to prove the elements of conspiracy under section 3729(a)(3), Relator must show: (1) the existence of an unlawful agreement between the City and HAUL to get a false or fraudulent claim allowed or paid by the Government; and (2) that at least one act was performed in furtherance of this agreement. *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 509 (S.D. Tex. 2003); *see also United States ex rel. Reagan v. East Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 856 (S.D. Tex. 2003). Conspiracy claims under the False Claims Act are governed by general principles of civil conspiracy. *Graves*, 284 F. Supp. 2d at 509. Thus, "[t]he essence of a conspiracy under the Act is an agreement between two or more persons to commit a fraud." *Id.* (citation omitted). In order to establish the existence of a conspiracy, Relator must show that Defendants "shared a specific intent to defraud the [G]overnment." *Reagan*, 274 F. Supp. 2d at 857 (quotation and citation omitted).

Here, Relator has failed to produce any evidence whatsoever that the City and HAUL entered into an agreement to get a false or fraudulent claim paid or approved by the Government,

14

or that Defendants agreed to commit a fraud.  Relator instead makes a number of conclusory references to such an agreement, for example, that "Relator believes that an agreement between the City and [HAUL] to obtain federal funds to which they are not entitled arguably constitutes a conspiracy.  It is like stealing money."  Resp. to HAUL's Mot. for Summ. J. at 3.  Relator's belief that such an agreement existed, however, is not enough to create a genuine issue of fact.

Additionally, Relator argued at the hearing before the Court that the City, through its representative, Mike Halpin, signed the request for payment forms submitted to it by HAUL.  These requests for payment were also signed by HAUL prior to being submitted to the City for payment.  *See* Rejoinder to Defs.' Mots. to Dismiss and for Summ. J., Ex. C.  Relator contends that the signatures of both HAUL and the City on the request for payment forms is circumstantial evidence of a conspiracy.  The fact that a City employee signed HAUL's requests for payment from the City, however, does not establish any kind of agreement between the City and HAUL to commit fraud, nor does it show any specific intent to defraud the government.  At best, these forms show that the City approved HAUL's requests for payment under the EHRP program.  This is not in any way equivalent to an agreement, either express or implied, to get a false or fraudulent claim paid or approved by the Government.  The request for payment forms themselves lend no support to Relator's conclusory allegations of a conspiratorial agreement between the City and HAUL.

Relator also urges that HAUL's certificates of completion, which accompanied the requests for payment, were notarized but not signed by the contractors who had performed work under the EHRP program.  *See* Rejoinder to Defs.' Mots. to Dismiss and for Summ. J., Ex. C.  Relator argues that this constitutes criminal conduct, and that HAUL's commission of such a crime, coupled with the City's approval of the requests for payment, constitutes evidence of conspiracy.  Relator has failed, however, to present any evidence that HAUL's submission of the

15

certificates of completion or the City's acceptance of the certificates of completion constitutes criminal conduct, nor has Relator shown that the contractors' failure to sign the certificates made them false or fraudulent in any way. Moreover, the fact that the City may have accepted incomplete or improper forms from HAUL does not establish that the City and HAUL agreed to engage in any fraudulent conduct, let alone to defraud the Government.

Defendants also assert that the City's and HAUL's different responsibilities and functions with respect to the EHRP demonstrate that they could not have entered into any kind of an agreement to get a false or fraudulent claim paid or approved by the Government. As HAUL points out, "the City and HAUL ha[d] different roles in the [EHRP] (i.e., [the] City is a . . . fund grantee while HAUL is merely a subrecipient), different constituencies, different personnel administering the EHRP, different forms for processing requests for reimbursement – all of which show a lack of coordination and agreement between the parties." Mot. for Summ. J. at 24. HAUL urges that this shows a "lack of coordination and agreement" between the City and HAUL, which implies that an agreement to defraud the government was impossible. *Id.* While the Court tends to agree, it is Relator's failure to present any evidence of an agreement to defraud the Government between the City and HAUL that defeats her conspiracy claim.[5] Absent evidence of such an agreement to defraud the Government, the mere cooperation between the City and HAUL in the administration of the EHRP does not constitute a conspiracy in violation of section 3729(a)(3) of the False Claims Act. Because Relator has failed to present evidence to create any genuine issue of material fact as to Defendants' alleged agreement to defraud the

---

[5] HAUL also asserts that Relator's section 3729(a)(3) conspiracy claim must be dismissed because Relator cannot prove her underlying section 3729(a)(2) claim. *United States ex rel. Coppock v. Northrup Grumman Corp.*, 2003 WL 21730668 at *14 n.17 (N.D. Tex. 2003) (holding that "where FCA conspiracy liability is based on an underlying claim that has been dismissed, the § 3729(a)(3) claim must also be dismissed"). Because the Court grants summary judgment for Defendants on Relator's section 3729(a)(2) claim, this provides an additional basis upon which Relator's section 3729(a)(3) claim fails.

Government, Defendants are entitled to summary judgment on Relator's 31 U.S.C. § 3729(a)(3) conspiracy claim.

### III. CONCLUSION

Defendant City of Houston's Motion for Summary Judgment and Defendant Houston Area Urban League's Motion for Summary Judgment are **GRANTED**, and Relator's claims under the False Claims Act, 31 U.S.C. § 3729(a)(2) and (a)(3) are **DISMISSED WITH PREJUDICE**. Defendant City of Houston's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED as MOOT**.

**IT IS SO ORDERED**.

**SIGNED** this 16th day of August, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**